18-18-12, Alere, Inc. v. Rembrandt Diagnostics, Mr. Wilcox. Thank you Judge Newman and may it please the Court. Jason Wilcox on behalf of Alere. The Board's decision in this appeal rests on two principal legal errors. First, the Board adopted an erroneous construction of the wear-in clause that appears in Claim 1 of the 019 Patent, and second, the Board applied a bodily incorporation test to decide obviousness. Repeating a mistake, this Court frequently warns courts and litigants to avoid. The Board's claim construction reflects an unreasonably narrow reading of the claims by requiring a structure that is capable of allowing liquid to enter the container when the flow control channel is disposed therein. That's at Appendix 17. This timing-based restriction cannot be correct. It is inconsistent with the language of the claims, which does not require a device capable of supporting any particular order of operations. It finds no support in the description of the invention in either the specification or the prosecution history, and it has nothing to do with the one and only advantage of the claim device the inventors disclosed at Column 7, Lines 54 to 58, which was eliminating flooding without the need for a wicking material. Instead, the wear-in clause describes how a sample fluid reaches the test strip within the flow control channel, not when the fluid reaches the container. And that construction, not the much-near... What part of the claim language do you say that requires that the fluid be added after the control flow channel is added to the container? Well, so we don't think that that's required by the claim at all, Judge Reina. The Board thought it was required by the when added to the container clause that appears in the claim. But we think that that clause, more correctly as read, is just clarifying that, number one, you don't actually have to have the sample fluid to have the claim device, and number two, that this isn't claiming the method of performing the actual test using the device. It's just claiming the device itself. If you didn't have the when clause, you would then potentially have an indefiniteness problem with this claim, because it would read as if it was claiming both the device and the method. By adding the when clause, the inventors made clear that they were only claiming the device, but they weren't imposing any particular order of operations on how the fluid is added to the device and whether the fluid is added before or after the flow control channel, or whether that's even a capability of the device. And I think you can tell that not only from the claim language, but also if you look at the specification at places like column five, lines 57 to 64, where it describes an actual embodiment of the invention, which is described as still preventing flooding even after the flow control channel is added to a sample container that contains fluid. So in that embodiment, the fluid is there before you add the flow control channel. And there's no indication that there's any requirement for that embodiment to also allow you to add fluid after the fact. And in fact, if you look at the specification in the prosecution history, not once did the inventor say anywhere that that's a central aspect of the invention or a required aspect of the invention. Were these claims amended during prosecution? These claims were amended during prosecution. In this respect? The when clause, although the structure of the claim changed a little bit, the when clause has been there since the beginning. So it has always been there, although the wording was slightly different, Judge Dyke. What was the wording before? I would need to look at the prosecution history, and I can have that for you on rebuttal, Judge Dyke. Yeah, I'll have that for you on rebuttal. Excuse me. But I think if you look at this when clause, and regardless of whether it was amended during prosecution or not, the phrase in the describing capability, I don't think that's consistent. Well, the significance of the amendment during prosecution is if the language was basically the same all along, and the specification has these embodiments where the fluid is there to begin with, then you would think the language wasn't designed to exclude that. I agree, Judge Dyke, and I will have the exact language for you on rebuttal. But the language was not changed in any significant respect. It's always been when added to the container. What was changed was the language surrounding it to make clear that it's direct application, that you don't need any wicking material. And that was to get around the tidings reference. And you can see the applicants making that argument at places like page 682 and 685 of the appendix. And that's not the only place also, Judge Dyke, where the claims actually talk about this ability to add, to have the fluid in there first. If you look at column 6, lines 22 to 27, it talks about immersing the flow control channel into the sample fluid. And it has the same exact description at column 1, lines 48 to 55. And if you're immersing something into a fluid, that means you're putting it into the fluid. It's not that the flow control channel is there first, and then you add it later. And the prosecution history also talks about, when it's characterized as an invention, never talks about the importance of when the fluid gets added. What the inventors consistently described as their invention was this notion of equalizing pressure, and that this equalized pressure would control the flooding. And that has nothing to do with when the fluid is added. And you can see that at appendix 682. You can see that at appendix 685. And it's repeated throughout the prosecution history. And unlike this consistent focus on directly adding the fluid and having this equalized pressure, once again, nowhere in the specification or the prosecution history do the inventors talk once about the importance of the timing of when the fluid is added, and whether it's added before or whether it's added after. And that's because it wasn't important to their invention. And that shows that the board's construction is unreasonably narrow and cannot be correct, as does the specification at column 7, lines 54 to 58, which talks about the advantage that all of the embodiments have. And what it describes as the one advantage of all of the embodiments is, quote, providing for direct application of sample fluid to the assay test strip, as opposed to having the fluid migrate through an intermediate structure, such as wicking material. That, once again, has nothing to do with the timing of when the fluid is added. And so I think that when you're trying to decide, as this court said in Inree Smith and Power Integrations, what is the broadest construction that corresponds with how the inventor described his invention in the specification, it's not a construction that imposes any limitation on when the fluid can be added, or whether there's a capability to add fluid after the fact. The claims are simply agnostic about whether fluid can be added to the container after the flow control channel is put in place. If there's no more questions about claim construction, however, I do want to point out that my client also has a second path to victory here, which is that the board also applied an unreasonable obviousness analysis even under its own construction. What the board did is it looked at a figure that Rembrandt prepared that showed what it would look like if you just simply took the holder that is in McKay and bodily incorporated it into the cup that is in Sipkowski and said, well, if you put... This is an issue that hasn't been addressed yet by the board, right? No, the board did address this issue in Appendix 24. This is the board first adopted its construction and then said, under our construction, we think that the combination of McKay and Sipkowski does not render this obvious because if you just physically take McKay's holder and put it inside Sipkowski without making any modifications, you can see in this figure it won't work. Well, that bodily incorporation type of analysis, which is all that the board did, is what this court has consistently rejected in cases like Clasco and MCM and Allied Erecting and Elgris. What you look at is you look at the teachings of the prior art. You don't look at whether you can bodily incorporate the two references together. It's not about embodiments, it's about teachings. As this court said in Clasco, you don't have to just have a puzzle element A that fits perfectly with puzzle element B. A person of ordinary skill in the art is a person of ordinary skill in creativity. Now, what the board didn't consider, Judge Dike, is whether you actually apply that correct legal analysis, whether these claims would be invalid. So even if you disagree with our claim construction, we think that a remand is necessary for the board to address the obviousness analysis under the proper legal framework rather than applying this bodily incorporation. Counselor, doesn't Sipkowski expressly teach a container that is closed off when the inner closure insert is in place? It does teach one that is closed off, but the question is would a person of ordinary skill in the art, would they be capable of modifying it? And we had an expert who at Appendix 858 to 859, and again at 1384 to 1389, walk through why he thought that you'd be able to make this combination work, and the board never addressed why that combination wouldn't work. Now, Rembrandt has some answers for why it thinks that combination wouldn't work. We disagree with those reasons, including because Rembrandt itself, at page 28 of its brief, acknowledges that you'd want to make this modification because there may be advantages to adding urine after the fact, and a person of ordinary skill in the art would recognize that. But the key point is the board didn't address that, and that alone is a reason to send it back because under the Administrative Procedure Act, Rembrandt's arguments can't substitute for a reasoned decision by the board on this issue. And so I gather that both sides share the view that this should go back in view of SAS in any case? Yes, so for the non-instituted claims and grounds, which McKay and Sipikowsky are instituted, but for the non-instituted claims grounds, both sides agree. To believe what's been adjudicated as is, you think that that would be the appropriate posture of such a remand? So just for the non-adjudicated aspects? Yes, I think that what the court should do is it should resolve the issues that are currently before the court, just as it did in South Tech, and then remand for the board to address the non-instituted claims and grounds. And that will, I think, be more efficient, Judge Newman, including because some of the board's reasoning for some of the other grounds in its institution decision, such as for this combination of a German patent with Sipikowsky, mirrored the exact reasoning it gave here. You can see that at appendix 250 to 252. And you can even compare the figures that are on page 21 of our reply brief. And so to just send it back now without adjudicating those issues first, we think would be an inefficient use of the parties in the court's time. The court is already prepared for oral arguments. It's already dug into the issues. And we'd just be back here in two years to have the same arguments about McKay and Sipikowsky, and probably the exact same arguments about why those also apply to the German patent and Sipikowsky. And so we think it'd be more efficient to resolve those, get those off the table, and then the parties can have whatever disputes they need to have about the uninstituted grounds, as well as claims 6 and 10, for which the board didn't institute on any of the grounds. And if there are no further questions from the court, I'll reserve the balance of my time. Thank you. Mr. Jennings. Thank you, Judge. Good morning, Your Honors. May it please the court. Do you agree that there are embodiments in the specification where the fluid is already in the container at the time that the test strip or test mechanism is added? There are statements that suggest that. They refer to immersion. I don't know if we can characterize them as embodiments, but they do suggest that the test strips and flow control channel are immersed in the fluid. Okay. So if that's the case, then don't you have a problem in terms of claim construction? Because the normal rule is that if the specification suggests an embodiment or an approach, that we would normally assume that that's within the claims. But it's the capability of the device to have sample fluid added to the and having that capability gives a primary benefit that's recited in the abstract and the title of the invention, that the device would be capable of operation in a single step. So even if there are embodiments as the fluid is in the container before the flow control channel or test strip is placed within the container, that doesn't suggest that those embodiments are in fact closed off. These machinations that we're going through to somehow interpret the claims to cover a device, that would be incapable of having fluid when the test strips and flow control channel were in fact disposed within the container. I understand what you're arguing, but was there any change in the claim language in this respect? The claims in the prosecution? Not with respect to the when added to the fluid container. So then I guess you got a problem if we were to disagree with you about the disclosures in the specification. Well if we look to, for example, one of the disclosures that counsel referred to is in column six. This is appendix 34, column six, starting at line 22. It says the liquid pervious side of the flow control channel is necessary to allow the pressure within and without the flow control channel to maintain substantial equilibrium, notwithstanding immersion into the sample fluid and entry of fluid into the assay test strip disposed within the flow control channel. So that could be referring to the state of it being immersed or as appellants argue, a step of immersion. But the specification goes on, your honor, and if we look further down in column six, starting at line 40, the specification says in use the test subject introduces an assay sample fluid, typically urine, into a fluid sample container such as cup two through mouth three. Closed end 35 of flow control channel 34 blocks sample fluid from entering the flow control channel as it is introduced through mouth three. And so this capability, after all what's claimed here is a device and it's not the fluid but the device is capable of having sample fluid added with the flow control channel which contains the test strip disposed within the container. So it's not just about the timing of when the sample, the board recognized that its construction could allow the sample to be added before or after the flow control channel is disposed within the container. So you were reading from the specification but isn't capability actually within the claim itself? Yes, Judge Arena. In fact, if we look at the claim language, the board's rested its decision on the plain meaning of the claim language. And this wearing clause, so the claim is fairly straightforward. The claims at issue here all depend from claim one. Claim one includes three elements, a flow control channel, a test strip within the flow control channel, and a sample fluid container. And then this wearing clause describes the structural relationship between those elements and how they work. And if we just go through that straightforward language of the wearing clause, where in the flow control channel is disposed inside the sample fluid container with the liquid pervious site oriented toward, and toward was a typo, was added the base of the sample fluid container so that the assay sample fluid, when added to the container, is delivered to the sample loading zone of the test strip. And it goes on. So that's describing and it's just plain meaning. But it doesn't seem to me that the language is really susceptible of a construction that it's able to do one or the other. It seems to contemplate a particular mechanism which is going to operate in a single way. It seems to, well after all the figures. There's nothing in this, there's nothing in the claim language that suggests that it's capable of operating no matter when the fluid is added. I submit that the claim language suggests that it's operable when the test strip, which is within the flow control channel, is disposed inside the sample fluid container, that the sample fluid can be added. And if you could not add the sample fluid with it so disposed, you're going to lose that benefit of the invention that it could operate as a single step, which is both the abstract and the title of the patent. And also the figures, the device shown in the figures, all show a device capable of having sample fluid added with the flow control channel and test strips disposed within the container. There could be fluid already in the container, correct? And then the test strip is included and then more fluid is added after that? The device remains capable, per the claim language, to add fluid with the flow control channel and test strip disposed within the container. During prosecution, the applicants consistently stated that the device of the present invention is shown in the figures. And those figures plainly show a device that's capable of adding fluid with the flow control channel and test strip disposed within. And even in the specification, the statement regarding immersion that appellants point to, it follows, as I read in column six, talks about in use, the sample is being... But what you're arguing is that a single device has to be capable of both methods of operation or both approaches? It simply has to be capable of having sample fluid... It has to be capable of doing both, whereas another construction is that the claim is of these embodiments is obvious, even though it claims another one, the whole claim is obvious. When they point to these statements that suggest the flow control channel is immersed into existing fluid, there's nothing in the specification that suggests that the device would then be closed off... But do you understand what I'm saying? What you're arguing is that a single device has to be capable of doing both, which seems to me not a natural reading of this, as opposed to a claim that's broad enough to cover either embodiment, whether fluid is there or when the fluid's added later. Whether it could be added before or not, per the claim language, it simply has to be capable... The claim language talks about the flow control... Why doesn't it be capable of doing both? Well, the claim language refers to the flow control channel being disposed within the container, and so we're talking about what's the capability of this device when the flow control channel is so disposed? And the board's reading of the plain language of that claim was that the device was capable of having sample fluid added to it, and that allows the device to operate in a single step, as is described as an advantage of the invention in both the title and the abstract. Now, the board below, in addressing an issue that's not here on appeal, said the advantage of single-step operation was not caused to read the term device in the preamble as requiring the ability to operate in a single step. But I submit that the where-in clause here, which describes the structural relationship of the three elements recited in Claim 1, describes a structure that those three elements work together to provide the benefit that a sample fluid can be added with the flow control channel disposed within the container. And that capability provides that advantage. Could you address the SAS issue that's before us? The parties agree, Judge Reyna, that the case needs to be remanded to address the uninstituted claims and grounds that the board— Could we decide the merits of this appeal first before— Initially, we thought it should just go back and we should avoid piecemeal litigation. But now, since such time has passed, we are here. We think the most efficient course is to address the merits of this appeal and then send it for the unaddressed claims and grounds that the board found lacking at the institution stage. Now, I'd like to address the argument about the alleged error by the board in bodily incorporating the references. The board specifically addressed the teaching of Sipkowski. The board recognizes that the teaching of Sipkowski was an interclosure insert whose function was to close off the container. So the board was recognizing the teaching. It was applying the teaching of Sipkowski. And said, Sipkowski teaches closing off, which is inconsistent with a device that's capable of having fluid sample added to the device when the flow control channel is disposed within the container. And in fact, this teaching of closing off the device was what Petitioner argued as the reason to combine. They argued that the reason one would combine Sipkowski with McKay was this advantage that Sipkowski taught of having a closure insert which could close off the device and avoid a user being contaminated with the urine sample. And in fact, it's the very argument that they made for their obviousness case. They argued, this is at Appendix 72, a posita would naturally considering using McKay's sealed test strip case with Sipkowski's cup and insert by inserting such a test strip case into the slot in the top of Sipkowski's insert. So that's the case they presented to the board. And the board addressed it. And the board also addressed the teachings of Sipkowski and said, Sipkowski closes off and it's inconsistent with what the claimed invention is. And a final point I'd like to make is the argument about one of skill in the art modifying Sipkowski's insert to permit fluid to be added to the assembled device. This was not made below. It was addressed in oral argument below. The concept of someone of skill in the art recognizing they potentially could pipette fluid through the insert of Sipkowski's insert. And the board recognized this was never made below. And that's in the board's decision at Appendix 24. And counsel is going even a step further. There's no evidence cited for this alleged obviousness to somehow modify Sipkowski to the argument. So the board addressed the teachings of Sipkowski in its obvious analysis. This new argument was not made below. It was suggested at oral argument. And the board properly found that it had not been made and found that it was waived. Well, if there is a remand for the other issues, the argument could then be made, could it not? If it were addressed in other grounds that were not instituted initially by the board. But on this record... It's hard to tell if there is a dispositive argument which comes up below an in oral argument and nonetheless to allow a decision to stand with the estoppels and meanwhile to remand on other grounds. That doesn't fulfill the purposes of SAS for which the Supreme Court decided every issue and argument should be considered. Correct. Doesn't that make sense? And the board would consider every issue and argument raised by the petition below.  Any more questions? Any further questions? Thank you, Mr. Jennings. Thank you, Justice. Thank you, Judge Newman. Judge Dyke, the site for you on the claims is Appendix 687. It's one of the office action responses and it shows how the claims were amended during prosecution. And it shows in particular that the when added to the container language has been there since the outset. And I think it's telling that counsel had no answer to Column 5, Lines 57 to 64 when you asked him about it, Judge Dyke, and how he could square the board's construction with that embodiment. He kept on wanting to talk about Column 6 and trying to explain that one away but couldn't explain away at Column 5, Lines 57 through 64 and how that would adequately be captured by the board's construction. I think that shows the critical flaw in what the board did here. And that it is hard to reconcile this construction with that disclosure. He said several times that reading the claims the way we want to read them and the way we think the claims read, which is the way in which you can do it either way, as you said, Judge Dyke, would be inconsistent with this notion of having a single step device. The claims don't claim a single step device. The board walked through why they don't claim a single step device at Appendix 13, including the fact that they chose not to put that language in the claims, and also because it would, again, be inconsistent with Column 5, Lines 57 to 64, because that specifically describes having a container that already has urine in it and then adding the flow control channel. That's not a single step. That's two steps. There was a lot of discussion about the teachings of Sivkowski and what we argued below. I completely agree with you, Judge Newman, that if there's any questions about that, the proper course here is to correct the board's misunderstanding that it could just apply a bodily incorporation theory, and then let the board address whether we sufficiently developed those arguments at Appendix 1384 to 1389, and also at Appendix 858 to 859. And I think that's most consistent with the teachings of SAS, and also most consistent with the role of this court when you're in an APA posture, where it's really the board's job to make any of those factual findings about whether we've met our burden. The problem here is the board committed a legal error that made it stop short of ever even addressing that question, and that alone requires a remand here, although we think that the remand most principally is required because of the board's erroneous claim construction and reading in this timing-based restriction into the claims. And finally, on the SAS point, it sounds like both parties now agree that the best path forward for the court is to resolve those issues. I think that would be the most efficient for the court, and I also think that would avoid any of the potential issues like what happened in the bio-delivery case, where this court remanded for the board to decide, and then the board, instead of deciding the issues that were in front of it, de-instituted, and there was never a chance to have appellate review of the board's decision. If there are no further questions, thank you, your honors. Anything else? Thank you. Thank you both. The case is taken under submission.